FILED

MAY 1 6 2006



UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| ARISTO INDUSTRIES, INC., | CIV. 06-4079 |
| Plaintiff, | |
| -vs- | MEMORANDUM OPINION AND ORDER |
| SHO-ME LIVESTOCK COOPERATIVE, INC., | |
| Defendant. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Plaintiff, Aristo Industries, Inc. ("Aristo") filed an Application for Temporary Restraining Order and Preliminary Injunction. (Doc. 1-5.) The defendant, Sho-Me Livestock Cooperative, Inc. ("Sho-Me"), filed a Motion to Compel Arbitration and to Dismiss. (Doc. 10.) A copy of the Licensed Distributor Agreement which contains the arbitration clause has been filed. (Doc. 1-4, Affidavit in Support of Application for Temporary Restraining Order and Preliminary Injunction, Exhibit A.) For the following reasons, the Motion for Temporary Restraining Order and Preliminary Injunction will be denied and the Motion to Compel Arbitration will be granted.

## BACKGROUND

The following facts are as alleged by Aristo or as gleaned from the documents filed in this case. Aristo manufactures and distributes several lines of pies under the federally registered trademark "Grandma Frey's Gourmet Pies." On or about July 25, 2003, Aristo entered into a Licensed Distributor Agreement ("LDA") with Belle Pie Co., a Missouri limited liability company. An arbitration provision is included in the LDA:

> **11. Arbitration**
> Any controversy or claim arising out of or relating to this Agreement or the breach thereof shall be settled by arbitration to be held in the City of Sioux Falls, State of South Dakota, U.S.A., in accordance with the Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrators may be entered in any Court having jurisdiction thereof.

With Aristo's consent, Belle Pie Co. assigned its interest in the LDA to Sho-Me. The LDA provided that Sho-Me would distribute pies manufactured by Aristo. In mid-2005, Sho-Me began manufacturing products on behalf of Aristo, including pies sold under the Grandma Frey's trademark. In approximately October or November of 2005, Aristo began receiving complaints from its customers relating to the quality of the pies being manufactured by Sho-Me. Specifically, various fruit pies were leaking out of the boxes and all over the store display cases. Aristo discovered that Sho-Me employees altered the recipe for Aristo's pies by using raw fruit in certain berry pies rather than using cooked fruit filling as required by the recipe. This caused the pies to leak, resulting in customer complaints and Aristo's loss of business. Approximately 2000 unsold pies were removed from store shelves. Sho-Me has refused to turn the defective pies over to Aristo. Aristo does not want the pies to reach the hands of paying customers.

Aristo also learned that Sho-Me has used Aristo's crust recipe to create a cobbler style product that Sho-Me is marketing under a different trade name. In addition, Sho-Me has begun manufacturing a dinner pie using the recipe for Aristo's dinner pie and marketing that pie under a different trade name. Further, Sho-Me ordered $15,000 worth of pie boxes to be used for packaging and distribution of Aristo pies manufactured by Sho-Me, but Sho-Me has refused to pay for the boxes. Aristo has been making the payments on behalf of Sho-Me.

Sho-Me was given written notification of its breaches of the LDA by Aristo on January 12, 2006, January 27, 2006, and February 27, 2006. Numerous other conversations were held between the parties' representatives; however, Sho-Me failed to take the actions requested by Aristo. On April 20, 2006, counsel for Aristo faxed and mailed a demand letter to Sho-Me, notifying Sho-Me that the LDA was terminated and that Sho-Me no longer had the right to manufacture or distribute pies using the Grandma Frey's trademark. The letter directed Sho-Me to return the recipe for Aristo's pies and cease the manufacture and distribution of any pies using a recipe based on Aristo's pie recipe. Sho-Me has not complied with the directives in the letter and Aristo believes Sho-Me intends to continue to manufacture and distribute pies under the Grandma Frey's trademark.

On May 1, 2006, Aristo commenced this action against Sho-Me by filing a Verified Complaint in the Circuit Court for Minnehaha County alleging claims of breach of contract, conversion, defamation of business reputation, trademark infringement, and misappropriation of trade secrets. Contemporaneously, Aristo filed a motion for a temporary restraining order and preliminary injunction. Aristo seeks to enjoin Sho-Me from manufacturing or distributing any pies using Aristo's recipe or Aristo's recipe as altered by Sho-Me, and from shipping any product in any package bearing the Grandma Frey's trademark, the Aristo name or design trademark or any derivative or similar trademark. A telephonic hearing was held in state court before Judge Stuart L. Tiede on May 3, 2006, with appearances by both parties. At the conclusion of the hearing, Judge Tiede orally agreed to partially grant Aristo's Motion for Temporary Restraining Order upon Aristo's submission of an appropriate written order and filing of an undertaking in the amount of $5,000. Sho-Me filed the Notice of Removal on May 5, 2006, before Judge Tiede signed an order. In the Notice of Removal, Sho-Me asserts that all of Aristo's claims are removable under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1332(a) (diversity of citizenship), and 28 U.S.C. § 1338 (trademarks).

On May 10, 2006, this Court held a hearing in order to address the motion for temporary restraining order.[1] Shortly before the hearing began, Sho-Me filed the Motion to Compel Arbitration and to Dismiss. Aristo requested time to respond to the motion to compel arbitration, and that request was granted. The Motion to Compel Arbitration and to Dismiss now has been fully briefed by the parties. Sho-Me argues that all of Aristo's claims are subject to arbitration under the above-quoted arbitration provision of the LDA and, therefore, the Court should dismiss or stay this action pending arbitration. Aristo does not argue that the claims are not subject to arbitration, but rather asserts that the Court should grant injunctive relief pending resolution of its claims by the arbitrator.

---

[1] Sho-Me had not yet been served with a copy of the Complaint when the Notice of Removal was filed on May 5, 2006, but Sho-Me had received a copy of the Complaint via facsimile from Aristo's counsel on May 3, 2006. There seems to be no authority barring removal until service has been perfectd. At the May 10 hearing, counsel for Sho-Me stated that Sho-Me has waived personal service, so personal jurisdiction is not an issue.

3

## DISCUSSION

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, ("the FAA") requires the Court to stay these proceedings if "it is satisfied that an issue before it is arbitrable under the [arbitration] agreement ...." *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 225-26 (1987); 9 U.S.C. § 3. The Court is to rigorously enforce arbitration agreements because of the federal policy favoring arbitration. *See Shearson*, 482 U.S. at 226. A dispute must be submitted to arbitration if there is a valid agreement to arbitrate and the dispute falls within the scope of that agreement. *Lyster v. Ryan's Family Steak Houses, Inc.*, 239 F.3d 943, 945 (8th Cir. 2001). The Court, rather than the arbitrator, is to decide the question of whether the dispute must be submitted to arbitration, unless it is clear the parties have agreed to allow the arbitrator to decide that question. *See St. Paul Fire and Marine Ins. Co. v. Courtney Enterprises, Inc.*, 270 F.3d 621, 624 (8th Cir. 2001); *AgGrow Oils, L.L.C. v. National Union Fire Ins. Co.*, 242 F.3d 777, 780 (8th Cir. 2001) (explaining that "[t]he question of arbitrability is for the court, not the arbitrator."). The arbitration agreement in this case does not allow the arbitrator to decide whether the dispute must be submitted to arbitration.

Again, Aristo does not deny that the parties' dispute falls within the scope of the arbitration agreement. The question posed by Aristo is whether the Court can grant injunctive relief pending a ruling by the arbitrator. Aristo points to the average time line supplied by the American Arbitration Association which shows that the median number of days from the filing of the arbitration request until the award is 297 days, effectively leaving Aristo without a remedy if this Court does not enjoin Sho-Me from distributing product in boxes bearing Aristo's trademarks during the 297-day period of arbitration. Aristo cites cases showing that many federal courts interpret the FAA as allowing the courts to issue preliminary injunctive relief in aid of arbitration. But the Eighth Circuit has held otherwise. *See Peabody Coalsales Co. v. Tampa Elec. Co.*, 36 F.3d 46, 47 n. 2 (8th Cir. 1994); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hovey*, 726 F.2d 1286, 1291-92 (8th Cir. 1984). In the Eighth Circuit, courts should not grant injunctive relief unless there is qualifying contractual language that permits it. *Manion v. Nagin*, 255 F.3d 535 (8th Cir. 2001). In *Manion*, the Eighth Circuit determined that the language of an employment agreement that allowed the parties to request "interim relief" and "injunctive relief in case of any breach" was not sufficient "qualifying

contractual language" to allow the plaintiff to request injunctive relief from the District Court and thus, at least temporarily, bypass the arbitration provisions. *Id.* at 538-39. The Eighth Circuit defined "qualifying contractual language" as "language which provides the court with clear grounds to grant relief without addressing the merits of the underlying arbitrable dispute." *Id.* (quoting *Peabody*, 36 F.3d at 47 n. 3.) The Court stated:

> It is true that the Agreement contemplates the possibility of interim judicial relief in the event of a dispute between the parties. It does not provide that a party is automatically entitled to injunctive relief, however, but only that a party may request such relief. Unlike the *Peabody* contract, it does not specify that the parties' "respective obligations ... shall be continued in full by the parties during the dispute resolution process." The provision allowing a party to request interim relief has been fulfilled since Manion filed a motion for a preliminary injunction and it was ruled on by the district court. Another provision in the Agreement states that a party is entitled to injunctive relief "in case of any breach," but in order to issue such relief the district court would have been required to determine that a breach had occurred and to have made a determination on the merits of the underlying dispute, an issue for the arbitrator.

*Id.* at 539 (internal citations omitted).

The Court finds that the language in the LDA at issue here does not allow the Court to consider Aristo's request for injunctive relief. The FAA states that, upon application of one of the parties, the case shall be stayed pending arbitration. 9 U.S.C. § 3. The Court presumes that arbitration will provide a prompt and fair resolution of the dispute for the parties. If it does not, that is for another day. Accordingly,

IT IS ORDERED:

1. That Plaintiff's Motion for Temporary Restraining Order or Preliminary Injunction is denied.

2. That Defendant's Motion to Compel Arbitration is granted and these proceedings are stayed pending arbitration.

3. That Defendant's Motion to Dismiss is denied.

5

4. That the Plaintiff shall provide the Court with quarterly updates on the status of the arbitration proceedings.

Dated this 16th day of May, 2006.

BY THE COURT:

*(signature)*
Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: *(signature)* Sharon Sury
 (SEAL)    DEPUTY